**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**PHYLLIS BUCHANAN,**
**AS PERSONAL REPRESENTATIVE**
**OF THE WRONGFUL DEATH BENEFICIARIES**
**OF LAURA HENDRIX, DECEASED**                                          **PLAINTIFF**

**VERSUS**                                          **CIVIL ACTION NO.: 3:23cv011-MPM-RP**

**DESOTO COUNTY, MISSISSIPPI**                                          **DEFENDANT**

**DEFENDANT DESOTO COUNTY, MISSISSIPPI'S**
**MEMORANDUM OF AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**

COMES NOW Defendant DeSoto County, Mississippi, by and through counsel, and submits these authorities in support of its Motion to Dismiss, as follows:

## I. INTRODUCTION

This case concerns the suicide of Laura Hendrix ("Hendrix") in the evening of August 25, 2021, while Hendrix was being held in the DeSoto County, Mississippi Jail. Now, Hendrix's mother Plaintiff Phyllis Buchanan brings this action pursuant to 42 U.S.C. § 1983 for an alleged violation of Hendrix's Fourteenth Amendment right to be protected from self-harm while in DeSoto County's custody. See Doc. 1. Because Plaintiff has failed to allege sufficient well-pleaded facts to show that Defendant DeSoto County is liable for a violation of Hendrix's constitutional rights, Defendant moves this Court to dismiss the claim against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. STANDARD

A defendant is entitled to dismissal under Fed. R. Civ. P. 12(b)(6) when the face of Plaintiff's complaint lacks sufficient factual content for the court to infer that the defendant is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Generally, at the motion-to-dismiss stage, the court

must accept the complaint's factual allegations as true.  Id. at 678.  Importantly, however, this rule is inapplicable to a plaintiff's conclusory statements and/or legal conclusions that are couched as factual allegations.  Id.; see also Matter of Ondova Ltd. Co., 914 F.3d 990, 992 (5th Cir. 2019).  In short, a plaintiff's complaint must allege sufficient facts beyond "labels and conclusions" that are "merely consistent with" a defendant's liability.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  Therefore, when a plaintiff is "armed with nothing more than conclusions" or "naked assertions," dismissal is proper.  Iqbal, 556 U.S., at 678-79.

When ruling on a motion to dismiss, the "district court 'must not go outside the pleadings' with *one exception*."  Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc., 976 F.3d 585, 589 (5th Cir. 2020).  The "one recognized exception to that rule [is] a district court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim."  Gines v. D.R. Horton, Inc., 699 F.3d 812, 820 (5th Cir. 2012) (quoting Scanlan v. Tex. A&M Univ., 343 F.3d 533, 536 (5th Cir.2003)).

Specifically, at the motion-to-dismiss stage, a district court may consider and "take judicial notice of [a] state court's orders, final judgment, and docket[.]"  Stiel v. Heritage Numismatic Auctions, Inc., 816 F. App'x 888, 892 (5th Cir. 2020) (citing Anderson v. Wells Fargo Bank, N.A., 953 F.3d 311, 314 (5th Cir. 2020)); see also DynexCap., Inc., 976 F.3d at 589.  When such records are directly relevant to the issue at hand, this is "clearly proper" under Federal Rule of Evidence 201 because the accuracy and authenticity of such records cannot be questioned.  Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Norris v. Hearst Trust, 500 F.3d 454, 461 n. 9 (5th Cir.2007)); see also Fed. R. Evid. 201(b).

Defendant maintains that in addition to the allegations in Plaintiff's complaint, this Court

may take judicial notice of the adjudicative facts reflected within the DeSoto County Chancery Court record. These documents are referred to in Plaintiff's Complaint and are directly relevant to Plaintiff's claim. Additionally, as state court records, the accuracy and authenticity of the source of these documents cannot reasonably be questioned. Therefore, Defendant has attached the DeSoto County Chancery Court's Commitment Record to its Motion to Dismiss as Exhibit A.

### III. **FACTS ALLEGED**[1]

On August 25, 2021, Plaintiff Buchanan sought and obtained a court-ordered "Writ to take Custody" ("Writ") of Hendrix to have her involuntarily committed as an alcoholic or drug addict. See Doc. 1 at ¶ 4; see also Chancery Court Commitment Record, attached to Defendant's Motion to Dismiss as Exhibit A. According to Plaintiff's "Alcohol & Drug Commitment Affidavit," Buchanan believed that because of Hendrix's alcoholism or drug addiction, Hendrix was "incapable of or unfit to look after and conduct her affairs;" that Hendrix was "dangerous to herself or others;" and that Hendrix had "lost the power of self-control because of periodic, constant or frequent use of alcoholic beverages or habit-forming drugs." Id. at ¶ 5; see also Ex. A at 3. The "Problem Appraisal" completed by Buchanan as part of her affidavit had the option to check three (3) different boxes that specifically asked whether Hendrix had displayed any "suicidal threats," or "suicidal thoughts," or "suicidal gestures." Plaintiff Buchanan did not mark any of these boxes to indicate that Hendrix was potentially suicidal. See Ex. A at 6.

At the time the writ was issued, Hendrix was set to be discharged from Baptist Memorial Hospital–DeSoto following her treatment for acute alcohol intoxication. Id. at ¶ 6; see also Ex. A

---

[1] Defendant must accept as true, for the limited purposes of this Rule 12(b)(6) motion, those factual allegations of Plaintiff's Complaint without conceding the accuracy of those allegations. Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 796 (5th Cir. 2011). Defendant reserves the right to contest all such facts in discovery, at summary judgment, and at any trial in this case.

at 3.  The Writ mandated that Hendrix be taken into custody and, depending on availability, either transported directly to a substance abuse treatment facility or held at the DeSoto County Jail until there was a spot available for her at one of the treatment centers.  Id.; see also Ex. A at 1.  Pursuant to the writ, a DeSoto County Deputy took Hendrix into custody around 2:00 p.m. (before she was able to leave the hospital).  Id.  Hendrix was then taken to the DeSoto County Jail to be held until she could be transferred to a drug and/or alcohol treatment center. Id. at ¶¶ 6-7; see also Ex. A at 1.

At the jail, Hendrix was placed in a cell by herself.  Id. at ¶ 10.  This jail cell had a phone with a corded headset affixed to the wall.  Id. at ¶¶ 19, 22.  During the next approximate three (3) hours and thirty (30) minutes, various jail personnel checked on Hendrix nine (9) times, with an average of approximately twenty-one (21) minutes between each check.  Id. at ¶¶ 12-14.[2]  Twenty-five (25) minutes after the eighth well-being check, jailor Christopher Carnell found Hendrix nonresponsive with the phone cord around her neck.  Id. at ¶¶ 14-17.  Jailor Carnell immediately called for assistance, including EMS, and began performing CPR on Hendrix.  Id. at ¶¶ 16-18.  All efforts to revive Hendrix were unsuccessful.  Id. at 18. Ultimately, it was determined that Hendrix had strangled herself to death with the phone cord inside her cell at the DeSoto County Jail.  Id. at 19.

## IV.  LAW AND ARGUMENT

Plaintiff has filed suit against DeSoto County alleging that DeSoto County knew or should have known that Hendrix was a danger to herself while she was in the County's custody.  See Doc. 1 at ¶ 20.  But because of DeSoto County's allegedly inadequate policy, procedure,

---

[2] According to the Complaint, the time period between each of the nine (9) well-being checks were 24, 42, 33, 15, 6, 25, 13, 7, and 25 minutes in length.  Id. at ¶¶ 13-14.

custom, and/or practice in dealing with detainees who presented a danger to themselves, Hendrix was placed in a cell with a phone cord and no video monitoring.  Id. at ¶¶ 21-22.  As a result of this allegedly inadequacy, Plaintiff's claims that Hendrix was able to commit suicide while in the County's custody in violation of Hendrix's Fourteenth Amendment right to be protected from self-harm.  Id. at ¶ 23.

As demonstrated herein, Plaintiff has failed to allege sufficient well-pleaded facts to state a plausible claim against Defendant DeSoto County.  Consequently, Plaintiff's claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A.  Plaintiff's claim is properly categorized as an episodic-act-or-omission claim.

Like the claim presented herein, "[c]onstitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'"  Shepherd v. Dallas Cnty., 591 F.3d 445, 452 (5th Cir. 2009) (quoting Hare v. City of Corinth, Miss., 74 F.3d 633, 644–45 (5th Cir.1996) (en banc)).  According to the Fifth Circuit,

> The "unconstitutional conditions" theory rests on the idea that the County has imposed what amounts to punishment in advance of trial on pretrial detainees, and it requires no showing of specific intent on the part of the County.  The "episodic acts and omissions" theory, in contrast, requires a finding that particular jailers acted or failed to act with deliberate indifference to the detainee's needs. Normally, episodic acts liability falls not on the County as employer, but on the individual employees for their particular acts.

Sanchez v. Young Cnty., Texas, 866 F.3d 274, 279 (5th Cir. 2017) (citing Shepherd, 591 F.3d at 452).  A case is properly categorized as presenting an episodic-act-or-omission claim where the plaintiff alleges that a jail official's conduct violated a detainee's constitutional rights and that the official's conduct resulted from a municipal policy or custom.  Id. at 280.

5

Here, Plaintiff claims that DeSoto County knew or should have known that Hendrix was a danger to herself while she was in the County's custody. But because of DeSoto County's allegedly inadequate policy, procedure, custom, and/or practice and a deliberate indifference to detainees who presented a danger to themselves, a DeSoto County jailor placed Hendrix in a cell with a phone cord and no video monitoring. As a result, Plaintiff claims that Hendrix was able to commit suicide while in the County's custody in violation of Hendrix's Fourteenth Amendment right to be protected from self-harm. See Doc. #1 at ¶¶ 20-24. These allegations against DeSoto County are properly characterized as an episodic-acts-or-omissions claim. See Sanchez , 866 F.3d at 279-80; see also Hare v. City of Corinth, Miss., 74 F.3d 633, 643 (5th Cir. 1996) (holding that claims concerning a State's duty protect detainees from suicide are regarded as episodic-acts-or-omissions claims).

     **B.**    **The Complaint lacks sufficient facts to reasonably infer that Defendant is liable for the alleged episodic act or omission.**

To state a plausible claim against DeSoto County, there must be sufficient facts that permit the inference that (1) a DeSoto County jailor was deliberately indifferent to Hendrix's risk of self harm, and (2) the jailor's acts resulted from a DeSoto County policy or custom adopted with objective indifference to Hendrix's constitutional rights. Sanchez, 866 F.3d at 280. The Complaint fails on both fronts to sufficiently plead such a claim and therefore should be dismissed.

     **1.**    **There are no facts pled regarding the deliberate indifference of DeSoto County Personnel.**

Under the first element of an episodic-act-or-omission claim, Plaintiff must plead sufficient facts that show a DeSoto County employee acted with deliberate indifference. Specifically, Plaintiff must demonstrate with factual content that a DeSoto County employee was "actually" aware of the substantial risk that Hendrix may harm herself, and the employee "disregarded that risk by failing

6

to take reasonable measures to abate it." Est. of Bonilla by & through Bonilla v. Orange Cnty., Texas, 982 F.3d 298, 305 (5th Cir. 2020) (quoting Hyatt v. Thomas, 843 F.3d at 177 (5th Cir. 2016)); see also Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Here, there are no factual allegations within Plaintiff's Complaint that permit the reasonable inference that DeSoto County personnel acted with deliberate indifference. Plaintiff has not pled any facts demonstrating that any employee of DeSoto County knew Hendrix was suicidal but disregarded the risks. This alone is enough for the Court to properly dismiss Plaintiff's claim against DeSoto County.

### 2. Plaintiff's allegations regarding DeSoto County's inadequate policy or practice are conclusory and fail to demonstrate objective indifference.

Under the second element of an episodic-act-or-omission claim, Plaintiff must factually attribute a DeSoto County employee's conduct to a DeSoto County policy or custom that was adopted with objective indifference to Hendrix's constitutional rights. Sanchez, 866 F.3d at 280 (citing Hare, 74 F.3d at 649 n.4). Importantly, the "complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts.'" Henderson v. Harris Cnty., Texas, 51 F.4th 125, 130 (5th Cir. 2022) (quoting Peña v. City of Rio Grande City, 879 F.3d 613, 622 (5th Cir. 2018)). The objective deliberate indifference standard considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights. Lawson v. Dallas Cty., 286 F.3d 257, 264 (5th Cir. 2002).

Here, Plaintiff claims DeSoto County maintained an inadequate policy and/or practice with regard to detainees that pose a risk of self-harm. Plaintiff seems to allege three specific

7

inadequacies: (1) inadequate monitoring, (2) no video monitoring, and (3) Hendrix's placement in a cell with a phone cord. See Doc. #1 at ¶¶ 21-22. These inadequacies, according to Plaintiff, evidence deliberate indifference to detainees that pose a risk of self-harm.

Plaintiff's allegations are conclusory and insufficient. Moreover, there are no specific facts which demonstrate that the policy or practice was adopted with objective indifference. Plaintiff fails to identify how the nine (9) well-being checks, with an average of approximately twenty-one (21) minutes between each check, over the course of the approximate three (3) hours and thirty (30) minutes reflects a constitutionally inadequate policy or practice. Additionally, the fact that Hendrix was placed in a cell with the phone cord, whether she was considered a suicide risk or not, does not reflect an inadequate policy because it did not violate a clearly established constitutional right. See Cope v. Cogdill, 3 F.3d 198, 210-212 (5th Cir. 2021).

## V. CONCLUSION

Plaintiff has failed to plead a plausible acts-or-omissions claim against Defendant DeSoto County. The Complaint completely lacks any facts that show a DeSoto County employee acted with deliberate indifference. Similarly, Plaintiff failed to sufficiently plead any facts to support her claim that Defendant DeSoto County maintained an inadequate policy or practice that was adopted with deliberate indifference to detainees that pose a risk of self-harm. Accordingly, this Court should dismiss Plaintiff's claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ *J. Cody Hallmark*
J. Cody Hallmark (Bar No. 105941)
jcodyhallmark@huntross.com
R. Jeff Allen (Bar No. 10593)
rjallen@huntross.com
HUNT ROSS & ALLEN
P.O. Box 1196
Clarksdale, MS 38614
662-627-5251 (telephone)
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I, J. Cody Hallmark, hereby certify that on March 24, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Brandon Flechas
The Stroud Law Firm, P.C.
brandon@stroudlawyers.com
***Attorney for Plaintiff***

This, the 24th day of March, 2023.

/s/ *J. Cody Hallmark*
J. Cody Hallmark