**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

PHYLLIS BUCHANAN,
AS PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH BENEFICIARIES
OF LAURA HENDRIX, DECEASED                                                          PLAINTIFF

VS.                                                              CAUSE NO.:3:23CV011-MPM-RP

DESOTO COUNTY, MISSISSIPPI                                                          DEFENDANT

**ORDER**

This cause comes before the court on the motion of defendant Desoto County, Mississippi to dismiss plaintiff's First Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiff Phyllis Buchanan has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

This case arises out of the suicide of Laura Hendrix on the evening of August 25, 2021, while she was being held in the DeSoto County Jail. Unlike most jail suicide cases which have come before this court, Hendrix was not being held at the jail pursuant to any criminal charges or convictions. Rather, Hendrix was being held pursuant to a "Writ To Take Custody" issued by the Chancery Court of Desoto County on August 25, 2021. This Writ provided as follows:

> **To the Sheriff of Desoto County**:
> An Affidavit having been made alleging that one Laura Hendrix, now in your County, is in need of emergency treatment as an alcohol or drug addict, you are hereby ordered to immediately take said Respondent into your custody and to detain him/her at Batesville or Corinth Crisis Center, if available, otherwise to the Desoto County Jail, until (s)he can be brought before the Court for a determination as to whether or not (s)he should be committed immediately to the Mississippi State Hospital as an alcoholic or drug addict. You shall report hereon your compliance herewith and file same with the Clerk of this court.

[Docket entry 24-1].

1

In describing the events which followed the issuance of this Writ, defendant writes in its brief that:

> Pursuant to the Writ, a DeSoto County Deputy took Hendrix into custody around 2:00 p.m. (before she was able to leave the hospital). Hendrix was then taken to the DeSoto County Jail to be held until she could be transferred to a drug and/or alcohol treatment center. At the jail, Hendrix was placed in a cell by herself. This jail cell had a phone with a corded headset affixed to the wall. During the next approximate three (3) hours and thirty (30) minutes, various jail personnel checked on Hendrix nine (9) times, with an average of approximately twenty-one (21) minutes between each check. Twenty-five (25) minutes after the eighth well-being check, jailor Christopher Carnell found Hendrix nonresponsive with the phone cord around her neck.

[Brief at 4 (record citations omitted).

As quoted above, plaintiff was held pursuant to a Writ which merely advised the Sheriff that Hendrix was "in need of emergency treatment as an alcohol or drug addict" but which did not state that she was suicidal. This court agrees with defendant that the fact that the Writ did not inform the Sheriff that Hendrix was suicidal constitutes a helpful fact for its defense in this case, but it seems clear that the chancery court documentation and exhibits which led to the issuance of the Writ is considerably more ambiguous. In its brief, Desoto County describes this chancery court record as follows:

> According to Plaintiff's "Alcohol & Drug Commitment Affidavit," Buchanan believed that because of Hendrix's alcoholism or drug addiction, Hendrix was "incapable of or unfit to look after and conduct her affairs;" that Hendrix was "dangerous to herself or others;" and that Hendrix had "lost the power of self-control because of periodic, constant or frequent use of alcoholic beverages or habit-forming drugs." *Id.* at ¶ 5; *see also* Chancery Court documents at 2, attached to Defendant's Motion to Dismiss as Exhibit B. The "Problem Appraisal" completed by Buchanan as part of her affidavit had the option to check three (3) different boxes that specifically asked whether Hendrix had displayed any "suicidal threats," or "suicidal thoughts," or "suicidal gestures." Plaintiff Buchanan did not mark any of these boxes to indicate that Hendrix was potentially suicidal. *See* Ex. B at 5.

[Brief at 3-4].

2

This court regards this as a very selective description of the chancery court documents upon which defendant relies in seeking dismissal of this case. Considering only the portions of the chancery court documents cited by defendant, it might be argued that, since plaintiff failed to check the boxes indicating that her daughter was suicidal, the reference to her being a "danger to herself or others" might be understood by anyone reading it to mean that she was a danger to others, but not to herself. However, other portions of the chancery court documentation submitted by defendant, including the portions written by plaintiff herself (as opposed to her merely checking boxes on a form), make clear that she believed that her daughter was a danger to herself. For example, an August 25, 2021 affidavit signed by plaintiff under a Desoto County Chancery Court letterhead states that Hendrix had "extreme mood swings," was "paranoid" and that she did not, according to plaintiff's belief, take the depression medicine which she had been prescribed. [Docket entry 24-2 at 2-3]. Most significantly, plaintiff's affidavit ends with the assertion that "respondent is currently a potential danger to herself and others and is in immediate need of inpatient treatment." [*Id.* at 3]. Similarly, a hand-written notation from an employee of Region IV Mental Health Services specifically states that "a writ is needed on Laura" because of her substance abuse which "makes her a danger [to] self and others." *Id.* at 1.

While this court agrees with defendant that plaintiff's failure to check the appropriate boxes indicating that her daughter was suicidal harms her case, the portions of the chancery court record quoted above make it clear that plaintiff did, in fact, indicate to the court that her daughter was a danger to herself. In alleging that her daughter's conditions of confinement at the Desoto County Jail were inappropriate for someone who was a suicide risk, plaintiff alleges that:

> The sole purpose for Laura Hendrix being held at the DeSoto County Jail was for her own protection from herself. It was known or should have been known to jail personnel that Laura was a danger to herself. Disregarding the risk that Laura posed to herself, jail personnel placed Laura within a jail cell alone. The cell had no video monitoring,

3

meaning that in order for Laura to be monitored, a member of the jail personnel had to physically go to the cell and look at Laura. Jail personnel only sporadically checked on Laura, giving her more than adequate time in which she could, and ultimately did, harm herself. Finally, Laura was provided with an implement which made harming herself particularly easy, a phone cord hanging from the wall like a noose. These are supportive facts stated with specificity in Plaintiff's complaint. In addition, Plaintiff's first amended complaint states that DeSoto County's policies were inadequate in that no video monitoring was required for individuals who presented a harm to themselves. Further, the only requirement for monitoring such individuals was at 30-minute intervals, which would leave more than enough time for such individuals to commit acts of self-harm.

[Plaintiff's brief at 3-4].

This court can certainly understand why plaintiff feels that Desoto County let her down by placing her daughter alone in a cell with a phone cord and no video surveillance after she indicated in her affidavit that she was a danger to herself. At the same time, it is not clear to this court whether jail employees were provided with a copy of the chancery court documents or whether they were otherwise informed that Hendrix was a danger to herself. This court believes that, if the evidence developed during discovery reveals that jail employees were provided only with the chancery court Writ, and not the affidavits which led to its issuance, then this would be highly adverse for plaintiff's case. This is because, as noted previously, the Writ merely indicated that Henricks was being held for drug or alcohol treatment and made no reference to her being a danger to herself. At the same time, defendant itself seems to acknowledge that the chancery court documentation is significant evidence in this case, since it relies upon it in seeking Rule 12 dismissal. That being the case, the fact that defendant provides a highly selective and self-serving description of its own exhibit makes this court rather strongly inclined to conclude that discovery will, in fact, be required in this case before ruling on its merits.

In concluding that this case is best considered in the context of a summary judgment motion following discovery, this court is also influenced by the inherent nature of jail suicide cases. Such cases involve the ultimate injury, namely death, which demands that they be taken

seriously. At the same time, the surviving family members in such cases tend to be heavily disadvantaged in their ability to learn the details of the final hours of their deceased relative's life, without first being given access to the discovery tools which might allow them to make proper inquiries in this regard. In so stating, this court emphasizes that jails and prisons are, by their inherent nature, locations where potential governmental defendants, but not members of the public, tend to have access to the information which ultimately determines whether potential liability exists under § 1983.

Thus, while this court agrees with defendant that "plaintiff has failed to allege any facts to support an inference that a DeSoto County Deputy or Jailor was actually aware that Hendrix was suicidal," it is unclear how it expects her to gain this knowledge without first being permitted to conduct discovery. While some may contend that § 1983 plaintiffs should be expected to know and allege this sort of thing at the outset of the litigation, that expectation simply does not strike this court as a realistic one under the circumstances. Indeed, this court seriously doubts that most jail employees would voluntarily disclose facts supporting their own potential liability, or that of their employer, to potential plaintiffs, without first being subpoenaed and required to submit to deposition questioning. That being the case, a stringent requirement that plaintiff know and allege, at the outset of a lawsuit, what jail employees whom she had never met knew at the time of her daughter's suicide is tantamount to saying that she may never seek recovery for her relative's death. Thus, while this court acknowledges that plaintiff faces a number of serious obstacles to any eventual § 1983 recovery in this case, including the stringent requirements of *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978), it concludes that defendant's arguments are best raised in the context of a Rule 56 summary judgment motion following discovery. Defendant's motion to dismiss will therefore be denied.

It is therefore ordered that defendant's motion to dismiss is denied.

This, the 22nd day of January, 2024.

<u>/s/Michael P. Mills</u>
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI
